UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN THE MATTER OF
THE EXTRADITION OF                                    Case No: 2:16-mc-29-FtM-CM
VICTOR MANUEL CRISMATT, JR.
_____

## ORDER

This matter comes before the Court upon review of a request for the extradition of Victor Manuel Crismatt Jr. ("Crismatt" or "extraditee") filed by the United States on behalf of the Republic of Panama ("Panama") pursuant to the Treaty between the United States of America and Panama, Providing for the Extradition of Criminals, signed on May 25, 1904, 34 Stat. 2851 (the "Treaty"). Docs. 29, 33-1.

On October 10, 2016, pursuant to 18 U.S.C. § 3184 and Article IV of the Treaty, the United States, acting for and on behalf of Panama, filed a Complaint for Provisional Arrest with a View towards Extradition (the "Complaint"). Doc. 2 ¶¶ 1-4. Crismatt is charged in the Province of Coclé, Panama with Aggravated Homicide by killing and dismembering his father on or about August 4, 2016. *Id.* ¶¶ 5-6. On August 5, 2016, the Court of Guarantees for the Province of Coclé issued a warrant for Crismatt's arrest. *Id.* ¶ 5. Crismatt is a United States citizen and currently is located in Fort Myers, Florida. *Id.* ¶¶ 10-11. The United States on behalf of Panama seeks to extradite Crismatt pursuant to the Treaty and 18 U.S.C. § 3184. Docs. 2, 29.

Pursuant to 18 U.S.C. § 3184 and the Complaint, a warrant directing the arrest of Crismatt was executed on October 11, 2016. Doc. 9. After his arrest, Crismatt

appeared before United States Magistrate Judge Mac R. McCoy on October 12, 2016, who advised Crismatt of the proceedings against him and appointed Assistant Federal Defender Martin DerOvanesian to represent Crismatt. Docs. 5, 8. After requesting a detention hearing, Crismatt waived the issue of detention and did not seek release pending extradition, and Judge McCoy ordered that Crismatt be detained without prejudice pending extradition proceedings and extradition. Doc. 13 at 1.

The United States filed electronic copies of the documentary support for the request for extradition in Spanish (Docs. 27, 39) and translations in English (Doc. 28). The United States also filed a memorandum of law in support of extradition. Doc. 30. Crismatt submitted two responses in opposition. Docs. 33, 37. The United States filed a reply brief in opposition to Crismatt's first response. Doc. 36. On May 18, 2017, the undersigned held a hearing on the request for extradition. Doc. 40. Crismatt appeared with his counsel, and the United States, acting for and on behalf of Panama, was represented by Assistant United States Attorney Jeffrey Michelland. Doc. 41. At the hearing, the United States presented the hard copy originals of the documentary support for the request for extradition in Spanish and translations in English, the Treaty, and a letter from the United States Department of State confirming receipt of the formal extradition request from Panama dated December 9, 2016. Government Exhibits 1-3, 4A-D, 5A-D.[1]

---

[1] The exhibits noted, hereinafter referred to as "Gov. Ex. ___," were offered by counsel for the United States and admitted during the extradition hearing. Doc. 41. Because the original documents were not paginated, the United States cited to the English translation of the electronic record (Doc. 28) in its briefs and during the hearing, and the Court will do the

During the hearing, Crismatt's counsel renewed his arguments made in his two filed responses (Docs. 33, 37), specifically noting his position that the Treaty does not apply to him, and represented that Crismatt's position remains the same as stated in his two responses. In addition, Crismatt's counsel informed the Court that he wished to preserve and maintain the rule of specialty at Article VIII of the Treaty.[2] *See* Doc. 33-1 at 5; Gov. Ex. 1.

## I. Evidence in Support of Extradition Request

Title 18, United States Code, Section 3190 governs the admissibility of documents offered during an extradition hearing. *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1164 (11th Cir. 2005). Section 3190 provides that:

> Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the . . . consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

18 U.S.C. § 3190.

During the hearing, with no objection by Crismatt, the Court found that the documents submitted by the United States on behalf of Panama are properly authenticated in accordance with 18 U.S.C. § 3190. In compliance with the statute, the United States submitted the certificate of Alice F. Seddon ("Seddon"), Consul

---

same in this Order.

[2] *See* discussion, *infra*, Section III.

General of the United State Embassy in Panama City. *See generally* Docs. 28-1 at 2; 28-2 at 1; 28-5 at 1; 28-7 at 1. Seddon certified that the supporting documents submitted by Panama are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of Panama as required by 18 U.S.C. § 3190. Doc. 28-1 at 2. Accordingly, the Court admitted the documents into evidence during the hearing. Docs. 27, 28, 40, 41; Gov. Ex. 1-3, 4A-D, 5A-D.

## II. Extradition

The matter of international extradition of fugitives is governed by 18 U.S.C. §§ 3184, *et seq.* when there is a treaty of extradition between the United States and any foreign government. The statute provides in relevant part:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, . . . any magistrate judge authorized so to do by a court of the United States, . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, . . . issue his warrant for the apprehension of the person so charged, that he may be brought before such . . . magistrate judge, to the end that the evidence of criminality may be heard and considered. . . . If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

18 U.S.C. § 3184.

The Eleventh Circuit has found that "extradition is a function of the Executive," allowing the courts to conduct only limited inquiry. *Kastnerova v. United States*, 365 F.3d 980, 984 n.5 (11th Cir. 2004) (citation omitted). A judge in extradition proceedings "conducts a hearing simply to determine whether there is evidence sufficient to sustain the charge against the defendant under the provisions of the proper treaty or convention." *Id.* at 984 n.5 (citation and internal quotation marks omitted). If a judge determines that the evidence is sufficient, then the judge "makes a finding of extraditability and certifies the case to the Secretary of State." *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 828 (11th Cir. 1993). Once the court finds that the accused is extraditable, the Secretary of State makes the final decision whether to surrender the accused. 18 U.S.C. § 3186; *Martin*, 993 F.2d at 829.

To make a finding of extraditability, courts generally consider four factors: (1) whether the judicial officer has authority to conduct extradition proceedings and the court has jurisdiction over the extraditee; (2) whether a valid extradition treaty exists; (3) whether the crime with which the accused is charged is extraditable under the extradition treaty; and (4) whether there is probable cause to believe that the accused is guilty of the charge pending against him in the requesting state. *Martin*, 993 F.2d at 828; *United States v. Peterka*, 307 F. Supp. 2d 1344, 1349 (M.D. Fla. 2003). If the extradition treaty at issue requires the doctrine of dual criminality be satisfied, that is, that the conduct charged is a crime under the law of the respective states, courts also consider if this requirement is met. *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1306 (11th Cir. 2000); *Peterka*, 307 F. Supp. 2d at 1349.

### a. *Whether the Court has authority to conduct extradition proceedings and jurisdiction over Crismatt*

It is not disputed that the Court has jurisdiction over Crismatt and authority to conduct his extradition proceedings. Docs. 30 at 13-14; 33; 37. Title 18, section 3184 authorizes any magistrate judge authorized by a court of the United States to conduct extradition proceedings. *Id.* Local Rule 6.01(c)(9) empowers United States Magistrate Judges of this District to conduct extradition proceedings. M.D. Fla. R. 6.01(c)(9). Furthermore, Crismatt was found in Fort Myers, Florida, which confers jurisdiction upon this Court. Doc. 2 ¶ 11; *see* 18 U.S.C. § 3184. Accordingly, the Court finds that it has jurisdiction over Crismatt and authority to conduct his extradition proceedings. *See* 18 U.S.C. § 3184.

### b. *Whether a valid extradition treaty exists*

The United States argues, and Crismatt does not dispute, that the Treaty is valid. Doc. 37 at 1. Tom Heinemann ("Heinemann"), an Assistant Legal Advisor in the Office of the Legal Advisor for the Department of State, declared that the Treaty is in full force and effect. Doc. 28-1 at 3; *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184-85 (1982) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight.").

Crismatt, however, asserts that the Treaty does not apply here because it does not permit the United States to extradite its own citizens, and he is a United States citizen. Doc. 33 at 2-5. Crismatt points to Article V of the Treaty, which states, "[n]either of the contracting parties shall be bound to deliver up its own citizens or

subjects under the stipulations of this Treaty." Doc. 33-1 at 4. Crismatt argues that the United States Supreme Court has held this particular language does not confer discretionary power upon the executive branch to extradite United States citizens. Doc. 33 at 3 (citing *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 18 (1936)).

The Court finds that Crismatt's interpretation of *Valentine* already has been addressed by Congress and rejected by other courts. The Supreme Court in *Valentine* held that the executive branch could not surrender United States citizens to a foreign government because although the power to extradite United States citizens may be given "by act of Congress or by the terms of a treaty," neither a statute nor the terms of the treaty conferred the power to do so. *Valentine*, 299 U.S. at 9, 18. The treaty at issue contained language similar to the one here, that "[n]either of the contracting Parties shall be bound to deliver up its own citizens or subjects under the stipulations of this convention." *Id.* at 6. The Supreme Court found that the terms of the treaty did not permit the executive branch to surrender United States citizens because the treaty "contain[ed] no express grant of the power." *Id.* at 11. The Court held that "it is not enough that . . . treaty does not deny the power to surrender [United States citizens]," but must confer expressly the power to do so. *Id.* at 9. Because no statute granted an independent power to extradite United States citizens, the Court concluded that the executive branch may not surrender United States citizens to a foreign government. *Id.* at 18. The Court noted that "the

remedy lies with the Congress," as the legislature may confer a power upon the executive branch to extradite United States citizens by enacting a statute. *Id.*

After *Valentine*, in 1990, Congress passed 18 U.S.C. § 3196, which provides:

> If the applicable treaty or convention does not obligate the United States to extradite its citizens to a foreign country, the Secretary of State may, nevertheless, order the surrender to that country of a United States citizen whose extradition has been requested by that country if the other requirements of that treaty or convention are met.

*Id.* Since that time, section 3196 has been part of the statutory scheme governing extradition in the United States. *In re Extradition of Ferriolo*, 126 F. Supp. 3d 1297, 1300 (M.D. Fla. 2015). As a result, even when, as here, an extradition treaty does not explicitly grant the power to extradite United States citizens, 18 U.S.C. § 3196 empowers the Secretary of State to do so, provided that the treaty's other requirements are met. *Basic v. Steck,* 819 F.3d 897, 900 (6th Cir. 2016).

Crismatt further argues that 18 U.S.C. § 3196 is invalid because it is "an illegal amendment to the original [T]reaty." Doc. 33 at 5. Although the Eleventh Circuit has not addressed this issue, the Sixth Circuit Court of Appeals in *Basic* rejected a substantially similar argument. 819 F.3d at 899. In *Basic*, the treaty at issue had language nearly identical to one here, providing that "neither country shall be bound to deliver up its own citizens." *Id.* (internal quotation marks and citation omitted); *see* Doc. 33-1 at 4. The extraditee, also a United States citizen, contended that 18 U.S.C. § 3196 is unconstitutional because the statute attempts to circumvent the treaty-making requirements of Article II of the United States Constitution. *Basic*, 819 F.3d at 899. The Sixth Circuit rejected this argument because the extradition

treaty at issue did not forbid the United States from extraditing its own citizens. *Id.* More importantly, the court noted that *Valentine* allows Congress to remedy the treaty's lack of explicit language granting discretionary power to extradite United States citizens by enacting a statute conferring an independent power allowing the executive branch to do so. *Id.* Hence, the Sixth Circuit concluded that 18 U.S.C. § 3196 empowers the Secretary of State to extradite United States citizens, given that the treaty's other requirements are satisfied. *Id.* at 900. Similarly, here, the Court finds that despite Article V of the Treaty, the United States may extradite Crismatt pursuant to 18 U.S.C. § 3196.

> c. *Whether the crime with which Crismatt is charged is extraditable under the Treaty and dual criminality is satisfied*

Crismatt does not dispute that the offense with which he is charged is extraditable under the Treaty. Doc. 37 at 2. Heinemann also declared that the crime with which Crismatt is charged is covered under the Treaty. Doc. 28-1 at 3. The certificate of Seddon states that Crismatt is charged with the crime of intentional homicide in Panama. Doc. 27-2 at 1. Article II of the Treaty provides that extraditable crimes include murder. Doc. 33-1 at 2. Article II further states that "[e]xtradition is also to take place for participation in any of the crimes and offenses mentioned in this Treaty, provided such participation may be punished, in the United States as a felony, and in the Republic of Panama by imprisonment at hard labor." *Id.* at 3. This requirement of dual criminality also has been met.

The United States provided in support a copy of the Criminal Code of Panama. Doc. 28-2 at 16. According to its criminal code, the crime of intentional homicide is

punishable by imprisonment of ten (10) to thirty (30) years in Panama. Doc. 28-2 at 19. The United States also asserted in the hearing that the crime of intentional homicide is a felony crime in the United States and Florida. 18 U.S.C. §§ 1111-12; Fla. Stat. §§ 782.04, 782.07. Accordingly, the Court finds that the crime of intentional homicide with which Crismatt is charged is extraditable under the Treaty, and the dual criminality requirement has been satisfied.

> d. *Whether there is probable cause to believe that Crismatt is guilty of the charge pending against him in Panama*

The Eleventh Circuit has held that in extradition proceedings, the government need not "show actual guilt, only probable cause that the fugitive is guilty." *Kastnerova*, 365 F.3d at 987. The courts do not examine whether the accused is innocent or guilty, but inquire only whether "there is evidence sufficient to show reasonable ground to believe the accused is guilty." *Id.* (citation omitted). The court's role is limited to examining "whether there is any competent evidence tending to show probable cause." *Escobedo v. United States*, 623 F.2d 1098, 1102 (5th Cir. 1980) (citations omitted).[3]

Here, Crismatt's counsel acknowledged during the hearing and in his brief that the United States has established probable cause for purposes of the extradition hearing, although he denied all of the allegations made against Crismatt and his alleged participation in the charged offense. Doc. 37 at 2. To show probable cause,

---

[3] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

the United States proffered various evidence, including statements of eyewitnesses, autopsy results, expert opinions of the evidence seized on the crime scene, and Crismatt's flight to Florida. Docs. 28-1, 28-2, 28-3, 28-4, 28-5, 28-6, 28-7, 28-8, 30 at 4-11.

For example, one witness, Alex Bolivar Hernandez, a security guard at the apartment where Crismatt and the victim lived together, stated that the victim owned a gray Toyota Rav4, and that he saw Crismatt taking the victim's car on August 4, 2016. Docs. 28-1 at 12,[4] 30 at 6-7. Furthermore, when the police searched Crismatt's apartment, they found a large ax or hatchet with a wooden handle. Docs. 28-1 at 12, 30 at 8. Crismatt purchased the ax at the local supermarket where his purchase was recorded by the store's security camera. Docs. 28-1 at 12, 30 at 8. The DNA analysis shows that the blood samples from Crismatt's apartment, the back of the gray Toyota Rav4, and the ax matched the genetic profile from the victim's remains. Docs. 28-1 at 12; 28-8 at 7, 17; 30 at 8-9. The undersigned has reviewed all of the proffered evidence and finds that there is evidence sufficient to show "reasonable ground to believe" Crismatt is guilty. Doc. 30 at 16-17; *see Kastnerova*, 365 F.3d at 987.[5]

---

[4] Ilsis M. Samaniego R., Guarantee Judge in the Province of Cocle, of the Criminal Justice System at the Second Judicial District, Supreme Court of Justice, in Panama, provided a sworn affidavit that contains a summary of evidence gathered during a criminal investigation of Crismatt's charged offense. Doc. 28-1 at 10-15.

[5] During the extradition hearing, Crismatt raised an objection to his statements made during an interview with Detective Smith of the county sheriff's office. During the interview, Crismatt described to the detective how he killed the victim and left Panama. Doc. 28-8 at 48-64. Crismatt does not dispute, however, that he is the named person in the extradition documents, and, as noted, acknowledged probable cause has been established.

### III. Rule of Specialty

During the hearing, Crismatt stated that he seeks to preserve and maintain the rule of specialty. According to the rule of specialty, "the requesting state, which secures the surrender of a person, can prosecute that person only for the offense for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave the prosecuting state to which he or she had been surrendered." *Gallo-Chamorro*, 233 F.3d at 1305.

Here, the Treaty contains language to that effect. Doc. 33-1 at 5. Article VIII of the Treaty provides:

> No person surrendered by either of the high contracting parties to the other shall, without his consent, freely granted and publicly declared by him, be triable or tried or be punished for any crime or offense committed prior to his extradition, other than that for which he was delivered up, until he shall have had an opportunity of returning to the country from which he was surrendered.

*Id.* Nonetheless, Crismatt seeks to preserve and maintain the rule of specialty in addition to this Treaty provision. As a result, the Court will preserve the rule of specialty and provide the relevant language in the certification of extraditability.

Based upon the above findings, the Court finds that the Republic of Panama has satisfied its burden to extradite Crismatt, and the Court will grant the Request for Extradition (Doc. 29) and issue a Certification of Extraditability and Order of Commitment as to Crismatt.

---

Doc. 37 at 2.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Request for Extradition (Doc. 29) is **GRANTED**.

2. Certification of Extraditability and Order of Commitment as to Victor Manuel Crismatt, Jr. will be issued by separate Order.

**DONE** and **ORDERED** in Fort Myers, Florida on this 30th day of May, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record